IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HIBAH MUHAMMAD, | : | |
|     *Plaintiff*, | : | CIVIL ACTION |
| | : | |
|     v. | : | |
| | : | |
| POLICE OFFICER JAMES BOLOGNONE, | : | No. 13-6440 |
|     *Defendant*. | : | |

<u>MEMORANDUM</u>

PRATTER, J.                                                                                                                                  DECEMBER 17, 2014

Plaintiff Hibah Muhammad asks the Court to "preclude evidence or testimony regarding Plaintiff's intoxication." Her motion focuses on the expert report and potential testimony of Defendant's expert, Dr. David Vearrier, who opines that Ms. Muhammad was intoxicated with PCP on the night that Defendant Officer James Bolognone came to her home and employed his taser on her, allegedly causing her to fall out of a second-story window. Officer Bolognone opposes the motion, arguing that Dr. Vearrier's testimony will assist the jury as it deliberates on a factual issue in dispute in this case. For the reasons set out below, the Court will deny Ms. Muhammad's motion.

**BACKGROUND**

According to her Amended Complaint, on the night of May 10, 2013, Ms. Muhammad was at her residence in a second-floor bedroom when a number of police officers entered her room, tasered her, and caused her to fall out of an open window and sustain serious injuries. Ms. Muhammad filed suit against the City of Philadelphia, City of Philadelphia Police Department,

1

and Officer Bolognone[1] under § 1983.  The City and Police Department filed, and the Court granted, an unopposed motion for summary judgment, leaving Officer Bolognone as the only remaining defendant.

Weeks after the deadline for *Daubert* motions, Ms. Muhammad filed what is styled as a motion *in limine* to preclude evidence or testimony regarding Plaintiff's alleged intoxication.[2] Officer Bolognone contests the motion.

**LEGAL STANDARD**

Federal Rule of Evidence 702 governs the admissibility of expert testimony.  It provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  The Supreme Court, in *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993), imposed upon district courts the role of a gatekeeper, charging trial courts to "ensure that any and all scientific evidence is not only relevant, but reliable." *ID Sec. Sys. Canada, Inc. v. Checkpoint Sys., Inc.,* 198 F. Supp. 2d 598, 601-02 (E.D. Pa.2002) (quoting *Daubert,* 509 U.S. at 589).  When "faced with a proffer of expert scientific testimony . . . the trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand and determine a fact in issue." *Id.* at 602 (quoting *Daubert,* 509 U.S. at 592).  This gatekeeping function of the district

---

[1] Originally, Ms. Muhammad sued an "Officer Jones," but later amended her Complaint to specify Officer Bolognone.

[2] By considering Ms. Muhammad's untimely *Daubert* motion – for that is precisely what the instant motion actually is – the Court is not endorsing any litigant's failure to respect the Court's pre-trial deadlines.  Ms. Muhammad and her counsel, like all counsel and every litigant, are cautioned to be conscientious with respect to the obligation to comply with the Court's procedures.

court extends beyond scientific testimony to "testimony based on . . . 'technical' and 'other specialized' knowledge." *Id.* (quoting *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 141 (1999)).

**DISCUSSION**

Ms. Muhammad calls her motion one to preclude evidence or testimony regarding Plaintiff's intoxication. She does not discuss, however, why that evidence of intoxication, in and of itself, would be irrelevant, prejudicial, or otherwise inadmissible information for the jury to use. Instead, she focuses on the "reliability" of Defendant's expert Dr. David Vearrier, who opines that Ms. Muhammad was high on PCP when the police officers arrived at her residence. Even though Ms. Muhammad fails to cite to the appropriate legal standards governing the admission of expert evidence in federal court,[3] the Court must determine whether Dr. Vearrier's opinion is admissible under the Federal Rules of Evidence, and specifically under Rule 702, which, as noted above, governs the admissibility of expert evidence.

Ms. Muhammad does not argue that Dr. Vearrier lacks the qualifications to opine on the issue of her intoxication. Rather, she seems to argue that Dr. Vearrier did not base his opinion on sufficient facts, that his report was not the product of reliable principles and methods, and/or that Dr. Vearrier did not reliably apply appropriate principles and methods to the facts of the case. Specifically, she argues that Dr. Vearrier should not be permitted to testify that she was high on PCP at the time of the incident at issue in this case because: (1) Dr. Vearrier relies on urine drug immunoassay results, but also states that such test results "cannot be used to prove current drug intoxication," (2) Dr. Vearrier relies on the reports of officers on the scene, while those reports actually differed from each other, (3) Dr. Vearrier relies on articles in E! Online and the *New York Daily News*, (4) Dr. Vearrier does not consider the effect of Ms. Muhammad's

---

[3] Plaintiff resorts only to case law from Pennsylvania state court.

fall from a second story window on her mental state, and (5) Dr. Vearrier does not take into consideration a number of other factors that are used to assess a person's level of intoxication with PCP, including those used to differentiate PCP intoxication from schizophrenia. While any of these issues may be appropriate for use in properly posed cross-examining Dr. Vearrier, none of them require his exclusion at this time.

As to the first issue, while Dr. Vearrier states that current drug intoxication cannot be proved solely by looking at urine drug immunoassay results, that does not mean that such test results cannot or should not be one piece of evidence for an appropriate professional to consider in arriving at an opinion on intoxication. Moreover, Dr. Vearrier does not rely solely on this evidence, a circumstance Plaintiff conveniently ignores. As to the second issue, the officers' recollections may differ on some details, as one may expect, but Ms. Muhammad does not point to any testimony from any officer that would contradict Dr. Vearrier's conclusions about Ms. Muhammad's mental state, such as, for instance, testimony that Ms. Muhammad was behaving rationally and calmly throughout her confrontation with the officers at the scene. As far as the Court can tell from the limited record before it, evidence of that kind from the officer witnesses simply does not exist.

As for the citations to news articles, it is clear from the context of those citations that the articles were cited simply as examples of the effect PCP has on its users. Indeed, those articles were cited alongside peer-reviewed medical journals and text books that illustrated the same points. Dr. Vearrier's reference to such articles does not fatally flaw his opinions or his testimony. As to Dr. Vearrier's supposed failure to consider Ms. Muhammad's fall in opining on her mental state, Dr. Vearrier specifically ruled out other causes for her mental state, including head injury. *See* Pl.'s Mot., Ex. 1 at 16.

As to the final objection, there is no requirement that every single test be used in order for an opinion to be considered reliable and admissible.  *See In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 759 (3d Cir. 1994) (noting that a "doctor does not always have to employ all of these techniques in order for the doctor's differential diagnosis to be reliable .... [S]ometimes differential diagnosis can be reliable with less than full information.")  Indeed, in this case, it would be impossible for Dr. Vearrier to administer additional tests, as he was not present at the scene of the altercation with police or at the hospital after that altercation and was therefore forced to rely on what medical records and witness reports were available from the relevant time period.  Once again, these additional considerations that Ms. Muhammad would have Dr. Vearrier take into account can be addressed by way of cross-examining Dr. Vearrier.  Ms. Muhammad does not point to any authority that would suggest that the additional information that she contends Dr. Vearrier should have considered *must* be considered in order to render an opinion on the subject at hand.

Ms. Muhammad concludes her motion by stating, without support, that the information concerning her intoxication "has no probative value."  As Officer Bolognone points out, however, evidence that Ms. Muhammad was under the influence of PCP implicates her credibility, sheds light on the context of Officer Bolognone's use of force, and supports the police witnesses' accounts of Ms. Muhammad's behavior.  The Court finds that Dr. Vearrier's testimony may be helpful to the trier of fact, and that its probative value is not outweighed by any prejudice to Ms. Muhammad.  Furthermore, the Court finds that Dr. Vearrier's report satisfies the criteria set forth in Rule 702.  Therefore, the Court will deny Ms. Muhammad's motion.

**CONCLUSION**

For the foregoing reason, the Court will deny Ms. Muhammad's motion *in limine*.  An appropriate Order follows.

BY THE COURT:


S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE
